DECISION
Plaintiffs have appealed the real market value (RMV) of their home for the 2010-11 tax year. The property is identified in the assessor's records as Account R504145. Trial in the matter was held on the courtroom of the Oregon Tax Court on October 10, 2011. John Slaughter (Slaughter) appeared and testified for Plaintiffs. Defendant presented its case through the testimony of Parker Van Slyke (Van Slyke). Also appearing for defendant were Steve Harris, Appraisal Division Manager, Chris Warner, Rural Property Appraiser, and Denise Terry, Senior Residential Appraiser.
 I. STATEMENT OF FACTS
The subject property is a custom built two-story home in Tigard, Oregon, on approximately one acre of land. The home was built in 1976. There are four bedrooms and three and one-half bathrooms. The home is accessed by a long driveway, portions of which are paved with asphalt and others with concrete. The home has approximately 2500 square feet of garage space. The home also has a sizable basement of approximately 3100 square feet. Slaughter testified that the basement regularly floods and is therefore only used for storage.
For the 2010-11 tax year, Defendant determined that the property's RMV was $603,360, with $228,360 attributable to the land and $375,000 to the improvements. Plaintiffs appealed those values to the county board of property tax appeals (BOPTA) and BOPTA sustained *Page 2 
Defendant's values. Plaintiffs timely appealed that decision to this court. By their Complaint, Plaintiffs have requested a total RMV of $273,586. At trial, Slaughter testified that he believed the total value of his home (land and house) was $303,100. Van Slyke testified that the value of Plaintiffs' property was $510,000.
 II. ANALYSIS
The issue is the RMV of Plaintiffs' property. RMV is defined in ORS 308.205(1)[1] as follows:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
The assessment date for the 2010-11 tax year was January 1, 2010. See generally
ORS 308.007.
ORS 308.205(2) further provides that RMV "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue and in accordance with [certain statutorily enumerated principles]." Those statutory principles require an RMV determination based on "[t]he amount a typical seller would accept or the amount a typical buyer would offer that could reasonably be expected by a seller of property." ORS 308.205(2)(a).
Plaintiffs have owned the house for many years. Plaintiffs did not present an appraisal, nor is there any evidence that they have tried to sell the home (meaning that there is no information on an asking price). Plaintiffs did not submit any comparable sales. Plaintiffs did not present any evidence of the value of the property based on the depreciated replacement cost of the home. *Page 3 
The burden of proof in the Tax Court is a "preponderance" of the evidence, and falls upon the party seeking affirmative relief which, in this case, is Plaintiffs. ORS 305.427. The Oregon Supreme Court has stated that:
 "`Preponderance' derives from the Latin word `praeponderare,' which translates to `outweigh, be of greater weight.' 8 Oxford English Dictionary 1289 (1933). With regard to the burden of proof or persuasion in civil actions, it is generally accepted to mean the greater weight of evidence."
Riley Hill General Contractor, Inc. v. Tandy Corp.,303 Or 390, 394, 737 P2d 595 (1987). This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Rev.,4 OTR 302, 312 (1971) (citation omitted).
Plaintiff Slaughter testified at length about the value of the property, relying largely on the assessor's records for the subject property. Slaughter used information in the assessor's records to arrive at a reevaluation of his home that came to $303,100. Additionally, Slaughter demonstrated that there are numerous discrepancies in the assessor's records regarding the identification of the various areas of the home (e.g., main living area, basement, garage, carport) and the square footage attributable to those areas, the value per square foot ("unit value") for the various areas of the home, the local cost modifier, and the final adjustment ("misc code") apparently applied by Defendant to arrive at a value for the different areas of the home. Neither Van Slyke nor any of the other representatives from the assessor's office addressed those discrepancies.
A cursory review by the court of the relevant documents submitted by Plaintiffs reveals that two of the three printouts presented by Slaughter were printed on December 20, 2010, and *Page 4 
the third was printed July 22, 2011. (Ptfs' Ex 1 at 12 — 14).[2] It is apparent from those documents that representatives in the assessor's office were having difficulty determining the correct size and layout of the subject property. Moreover, it is understandable why Slaughter was troubled by the three documents because, while Defendant's representatives modified their value per square foot and local cost modifiers, it does not appear that they ever changed their opinion as to the value of the subject property. Until trial, that number (RMV) remained constant at $603,360. Thus, for example, when Defendant increased the square footage of the main living area, it decreased the value per square foot. (See, e.g. Ptfs' Ex 1 at 12 — 13.)
However, in appraising the property for trial, using sales of homes similar to the subject, Defendant's appraiser Van Slyke concluded Plaintiffs' home had a total RMV of $510,000. According to the testimony, that value estimate was based on an inspection and independent examination of the subject property.
More importantly, Plaintiffs did not present any market evidence as to the value of their property. "[I]t is not enough for a taxpayer to criticize the county's position. Taxpayers must provide competent evidence of the [real market value] of their property."Woods v. Dept. of Rev., 16 OTR 56, 59 (2002), citingKing v. Dept. of Rev., 12 OTR 491 (1993).
For its part, Defendant's appraiser Van Slyke presented a 24 page valuation report for the subject property concluding that Plaintiffs' property had an RMV of $510,000 as of January 1, 2010, with $212,270 attributable to the land and $297,730 to the improvements. (Def's Ex A at 2.) As indicated above, Van Slyke's value is based on the sale of three comparable properties, with adjustments made to account for differences between those properties and Plaintiffs' *Page 5 
property. Van Slyke's adjusted sale prices range from a low of $506,200 (comparable #2) to a high of $521,800 (comparable #1). (Id. at 9.) The court found Van Slyke to be a credible witness and concludes that his appraisal presents a reliable indicator of the value of the subject property as of the applicable assessment date.
 III. CONCLUSION
After careful consideration of the evidence, the court concludes that Defendant did originally overvalue the subject property. However, the court is not persuaded by Plaintiffs' evidence or testimony as to the value of the subject property. Rather, the court concludes that Defendant's appraiser presented the best evidence as to the value of the subject property as of the applicable assessment date. Accordingly, the court concludes that the RMV of the subject property, Account R504145, was $510,000 as of January 1, 2010. Now, therefore,
IT IS THE DECISION OF THIS COURT that Defendant shall reduce the RMV of the subject property for the 2010-11 tax year from $603,360 to $510,000.
IT IS FURTHER DECIDED that Defendant shall reduce the assessed value of the subject property for the 2010-11 tax year from $528,780 to $510,000.
Dated this____day of October 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor,1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinsonon October 31, 2011. The Court filed and entered this documenton October 31, 2011.
[1] All references to the Oregon Revised Statutes (ORS) are to 2009.
[2] Plaintiffs did not mark that exhibit as Exhibit 1, but simply presented 15 pages of information stapled together and numbered "1 of 15," "2 of 15," etc. However, because Plaintiffs submitted another exhibit marked "A," the court has chosen to mark the 15 page exhibit as Exhibit 1, and the exhibit marked "A" as Exhibit 2. Additionally, at trial Slaughter introduced a revised replacement version of his exhibit marked "A" with Defendant's assent (after review). That exhibit, which the court has re-marked as Exhibit 2, is in actuality akin to a trial notebook, beginning with a short narrative reminiscent of an opening statement, followed by six pages of mathematical calculations which Slaughter walked the court through at trial, and several pages of printed material from an on-line valuation service that relate to Defendant's comparable #1.
 *Page 1